DISTRICT OF OREGON
**F I L E D**
May 15, 2020
**Clerk, U.S. Bankruptcy Court**

Below is an opinion of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>**Bonni Lyn Blevins**,<br><br>Debtor. | Chapter 13<br><br>Case No. 19-33947-dwh13 |
| **Credit Associates Inc.**, an Oregon corporation,<br><br>Plaintiff,<br>v.<br><br>**Bonni Lyn Blevins** and **Citadel Servicing Corp.**,<br><br>Defendants. | Adversary Proceeding No. 20-3002-dwh<br><br>MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO DISMISS<br><br>NOT FOR PUBLICATION |

**I.    Introduction**

Defendant Bonni Lyn Blevins, the chapter 13 debtor, moves to dismiss this action for failure to state a claim for relief. For the reasons that follow, I will grant the motion in part, deny it in part, and grant leave to amend the complaint.

Page 1 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

## II. Background

Credit Associates Inc. commenced this action against Blevins and Citadel Servicing Corp.[1] For the motion to dismiss, I must accept the following allegations of the complaint. Blevins owes Credit Associates a debt for medical expenses incurred by her late husband, Freddie Blevins (and herself and her child).[2] (Because she and her husband shared a last name, to avoid confusion, I refer to him as Freddie.) While acting as a fiduciary for the decedent's estate, she fraudulently filed a small-estate affidavit falsely stating that there were no creditor claims against the estate.[3] (References to "estate" are to a decedent's estate, not a bankruptcy estate.) She prematurely recorded a deed conveying real property of the estate to herself and granted Citadel a trust deed on the property.[4]

The complaint makes three claims requesting the following relief: (1) "denial" of the discharge of Credit Associates' claim against Blevins under 11 U.S.C. § 523(a)(2) and (4),[5] (2) denial of her discharge under "11 USC § 727(2) [sic],"[6] and (3) setting aside the trust deed in favor of Citadel or subordinating it to the Credit Associates' claim against the estate.[7]

Blevins has moved to dismiss this action under Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6).[8] Credit Associates opposes the motion and requests leave to amend its complaint to the extent that I dismiss it.[9]

---

[1] Docket item (DI) 5 (complaint).
[2] Complaint ¶ 3.
[3] Complaint ¶ 7.
[4] Complaint ¶ 8.
[5] Complaint ¶¶ 6-8.
[6] Complaint ¶¶ 9-10.
[7] Complaint ¶¶ 11-13.
[8] DI 23 (motion to dismiss).
[9] DI 14 (opposition).

Page 2 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

Case 20-03002-dwh    Doc 35    Filed 05/15/20

**III.     Governing standards**

"A dismissal under rule 12(b)(6) may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[10] All allegations of fact must be accepted as true for purposes of the motion, but legal conclusions or implausible inferences need not be accepted.[11] If a complaint falls short under this standard, the court still may not dismiss it without first considering whether its defects can be cured by amendment.[12]

**IV.     First claim: sections 1328 and 523(a)**

The first claim begins with a heading that requests denial of discharge under sections 1328 and 523(a)(2) and (4). Under section 1328, the discharge exceptions of section 523(a)(2) and (4) apply to chapter 13 cases. Following the first heading are three paragraphs, none of which cites section 523 or otherwise specifies which factual allegations support relief under paragraphs (a)(2) or (4).

As explained below, Credit Associates asks that I consider the text of the second claim for relief (which it concedes is legally insufficient) as supporting the first claim. The only substantive text of the second claim is the allegation that Blevins, with intent to hinder, delay, or defraud Credit Associates, a creditor of the estate, transferred and permitted to be transferred property of the estate within one year of filing of Blevins's petition and encumbered the property in favor of Citadel.

---

[10] Kwan v. SanMedica Int'l, 854 F.3d 1088, 1093 (9th Cir. 2017) (internal quotation marks omitted).
[11] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 564; 570 (2007).
[12] Grancare, LLC v. Thrower by and through Mills, 889 F.3d 543, 550 (9th Cir. 2019).

Page 3 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

### A. Section 523(a)(2)

The first legal basis that Blevins asserts for her first claim is section 523(a)(2). Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . .," other than a statement of the debtor's financial condition. Section 523(a)(2)(B) excepts similar debts, but only those arising from use of a written statement of the debtor's financial condition. Although the complaint does not cite subparagraph (A) or (B), I infer from the absence of any allegation regarding a statement of Blevins's financial condition that Credit Associates relies on subparagraph (A), rather than (B).

In her motion, Blevins asserts that the complaint is defective because it lacks any allegation that her debt for medical services was "obtained by fraud."[13] She does not address any other allegation of the complaint as a possible factual basis for a claim under section 523(a)(2).

In its opposition, Credit Associates disclaims any argument that the fraud at issue arose in connection with the incurring of the medical debt. Credit Associates then argues that the court should assume the truth of the complaint's allegations and view them in the light most favorable to Credit Associates, and it quotes all the first and second claims without further argument. Among the quoted allegations are that she fraudulently filed the affidavit, failing to disclose Freddie's debt to Credit Associates, and wrongfully transferred Freddie's real property to herself and encumbered it without paying creditor claims.[14] The opposition also sets forth certain allegations of fact, including exhibits, that are consistent with but extend beyond the allegations of the complaint. One of those allegations is that, at Credit Associates' request, the probate court

---

[13] Motion at 5:18 - 6:4.
[14] Opposition at 3.

Page 4 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

made a summary review of Blevins's conveyance of the property and court ordered her to pay Credit Associates' claim for $65,732.42.[15] In deciding the complaint's legal sufficiency, I cannot consider allegations outside the complaint, other than as an implicit representation that Credit Associates is prepared to include them in an amended complaint.

At argument, Blevins's lawyer contended that neither the state circuit court handling Credit Associates' lawsuit nor the probate court handling the small-estate case found that she had committed fraud. To the extent that she relies on the medical debt as not having been incurred by fraud, she ignores Credit Associates' disclaimer of that position. And to the extent that she relies on the presence or absence of a factual or legal determination by the probate court, I cannot consider in the context of a motion to dismiss allegations of facts not found in the complaint. Her lawyer did not address at argument Credit Associates' reliance on all three paragraphs of the first claim for relief as support for its section 523(a)(2) argument. And she does not argue that the state court exonerated her of fraud, only that it did not expressly find fraud. That a creditor did not prove fraud before a state court does not preclude it from doing so in a nondischargeability action.

In 2016, the Supreme Court in *Husky Intern. Electronics, Inc. v. Ritz*[16] held that an actual-intent fraudulent conveyance can constitute "actual fraud" under section 3523(a)(2)(A), supporting a determination that a debt predating the transfer is nondischargeable. The Court rejected the debtor's argument that a fraudulent conveyance cannot result in the debtor "obtain[ing]" debt, holding instead that the recipient of a fraudulent transfer who intentionally

---

[15] Opposition at 3, ¶ 8, Ex. 2.
[16] 136 S.Ct. 1581 (2016).

Page 5 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

commits fraud can incur a nondischargeable debt traceable to the fraudulent transfer.[17] The Court also rejected the argument that the phrase "obtained by . . . actual fraud" requires that the debt result from fraud at the inception of a credit transaction.[18]

It would have been helpful had Credit Associates specifically addressed in its opposition the "obtained by" requirement of section 523(a)(2), i.e., how Blevins became indebted to Credit Associates "for money, property, services, or an extension, renewal, or refinancing of credit . . . *obtained by* . . . false pretenses, a false representation, or actual fraud . . .." Nonetheless, its quotation of its allegations that, in substance, she fraudulently obtained estate real property at its expense supports a claim that her transfer of the real property created a debt "obtained by fraud." I will deny her motion to dismiss the first claim for relief to the extent that it relies on section 523(a)(2). Because she addressed only the "obtained by" requirement, I make no other determination regarding the legal sufficiency of the first claim to the extent it arises under section 523(a)(2).

  B. *Section 523(a)(4)*

The second legal basis that Blevins asserts for her first claim is section 523(a)(4), which creates a discharge exception for debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

The complaint alleges that Blevins was acting in a fiduciary capacity because she was the affiant and claiming successor in the small-estate case.[19] Credit Associates does not explain which of the three subcategories of section 523(a)(4) (fraud or defalcation by a fiduciary, embezzlement, or larceny) it intends to prove. Because the complaint specifically alleges that she

---

[17] *Husky*, 136 S.Ct. at 1589.
[18] *Husky*, 136 S.Ct. at 1589, 1591.
[19] Complaint at 3.

Page 6 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

Case 20-03002-dwh   Doc 35   Filed 05/15/20

was "acting in a fiduciary capacity," I infer that it relies on the theory of fraud or defalcation (and not embezzlement or larceny) while acting in a fiduciary capacity.

In the motion, Blevins argues the statutory fiduciary obligation of the personal representative of an Oregon probate estate is owed only to heirs or devisees and not to estate creditors, such as Credit Associates.[20] But she does not expressly address the statutes governing small-estate affiants.[21] In Credit Associates' opposition, it cites the current version of ORS 114.545(1)(a), which declares a small-estate affiant to be a fiduciary.

At argument, Blevins's lawyer pointed out that the fiduciary language in the current version of ORS 114.545(1)(a) was added by a 2019 amendment that became effective in 2020—after Freddie's death.[22] The lawyer also argued that ORS 114.545(3) makes property conveyed by an affiant free of the rights of the decedent's unsecured creditors, and ORS 114.560 provides that the exclusive remedy for an affiant's violation of the small-estate statutes is a summary determination by the probate court. Credit Associates' lawyer argued that a small-estate affiant was a fiduciary even before the statutory amendment making that status explicit and that Blevins was effectively a personal representative of the estate and thus should be treated as one.

### 1. Whether a small-estate affiant is a fiduciary

#### (a) Cases interpreting "fiduciary capacity" in section 523(a)(4)

Whether a debtor is a fiduciary under section 523(a)(4) is a question of federal law.[23] Nonetheless, the Ninth Circuit has relied in part on state law to ascertain whether the requisite trust relationship exists.[24]

---

[20] Motion at 6:5-22.
[21] ORS 114.505-114.560.
[22] 2019 Or. L. c. 165 §§ 13, 33(1); ORS 114.545(1)(a) (2019).
[23] Lewis v. Scott (*In re* Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996).
[24] Cal-Micro, Inc. v. Cantrell (*In re* Cantrell), 329 F.3d 1119, 1125 (9th Cir. 2003).

Page 7 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

The broad definition of "fiduciary" as a relationship involving confidence, trust and good faith is inapplicable to section 523(a)(4). Instead, a debtor acts in a fiduciary capacity toward another person only when the debtor acts toward that person "in relation to an express or technical trust that pre-dates the alleged defalcation."[25] (The Supreme Court has used the term "technical trust" to refer to trusts not implied from contract.[26] The Ninth Circuit's cases have used the phrase in tandem with "express trusts," which supports their separate meanings.[27]) Conversely, a debtor does not act in a fiduciary capacity when acting under a "constructive, resulting, or implied trust" that a court creates as a remedy for an earlier act of wrongdoing.[28] In other words, the fiduciary capacity must be clearly and expressly imposed on the debtor before and without reference to the wrongdoing that caused the debt.[29]

An express or technical trust need not arise by virtue of a formal trust agreement, but it can describe a relationship on which "trust-type"[30] or "trust-like"[31] duties are imposed by statute. Thus, a statute need not use the labels trust or fiduciary to describe the duties. Rather, the inquiry is whether the nature of the duties imposed on the debtor (not how they are labeled) is sufficiently like the nature of duties imposed on an express trustee. The Eighth Circuit

---

[25] *In re* Pemstein, 492 B.R. 274, 281 (9th Cir. B.A.P. 2013). *See also Cantrell*, 329 F.3d at 1125.
[26] Davis v. Aetna Acceptance Co., 293 U.S. 328, 333 (1934).
[27] *See, e.g.,* Lewis v. Scott (*In re* Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996).
[28] Runnion v. Pedrazzini (*In re* Pedrazzini), 644 F.2d 756, 758 (9th Cir. 1981); *Pemstein*, 492 B.R. at 281.
[29] *Cantrell*, 329 F.3d at 1125.
[30] LSP Inc. P'ship v. Bennett (*In re* Bennett), 989 F.2d 779, 784-85 (5th Cir. 1993), quoted in *In re* Houng, 636 Fed. App'x 396, 399 (9th Cir. 2016). *See also Pedrazzini*, 644 F.2d at 758 n.2.
[31] Double Bogey L.P. v. Enea (*In re* Enea), 794 F.3d 1047, 1050 (9th Cir. 2015), *quoting* 4 Collier on Bankruptcy ¶ 523.10 (Alan N. Rennick & Henry J. Sommer eds., 16th ed.).

Page 8 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

Case 20-03002-dwh    Doc 35    Filed 05/15/20

recognized in 1985 that "it is the substance of a transaction, rather than the labels assigned by the parties, which determines whether there is a fiduciary relationship for bankruptcy purposes."[32]

The Ninth Circuit has described in different ways the characteristics of a statutory duty that constitutes a fiduciary duty under section 523(a)(4) (in addition to the requirements that trust property be identified and that the duties arise before the wrongdoing). In 1981, the circuit held that a statutory relationship must "exhibit characteristics of the traditional trust relationship,"[33] such that "true fiduciary responsibilities have been imposed."[34] In 2001, it held that a statute must "identify the fiduciary's fund management duties."[35] And in 2015, it held that a statute must "clearly outline the fiduciary duties" and "clearly and expressly impose trust-like obligations."[36]

Thus, for a statutory duty to constitute a fiduciary duty under section 523(a)(4), it must arise before and without regard to wrongdoing, identify trust property, and clearly and expressly impose true fiduciary duties that are characteristic of a traditional trust relationship, but the statute need not use the terms trust or fiduciary.

### (b) Fiduciary duties that must be imposed by a statutory scheme to constitute a technical trust

A 2012 Eighth Circuit decision acknowledged that "[d]etermining whether a particular statute has [created the fiduciary relationship required by section 523(a)(4)] can be difficult."[37]

---

[32] Barclays American/Business Credit, Inc. v. Long (*In re* Long), 774 F.2d 875, 878 (8th Cir. 1985).
[33] Runnion v. Pedrazzini (*In re* Pedrazzini), 644 F.2d 756, 758 (9th Cir. 1981). *See also Houng*, 636 Fed. App'x at 399; Blyler v. Hemmeter (*In re* Hemmeter), 242 F.3d 1186, 1189-90 (9th Cir. 2001); Teichman v. Teichman (*In re* Teichman), 774 F.2d 1395, 1399 (9th Cir. 1985).
[34] *Pedrazzini*, 644 F.2d at 758 n.2.
[35] *Hemmeter*, 242 F.3d at 1189-90.
[36] *Enea*, 794 F.3d at 1050, quoting 4 Collier on Bankruptcy ¶ 523.10 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).
[37] Arvest Mortgage Company v. Nail (*In re* Nail), 680 F.3d 1036, 1040 (8th Cir. 2012).

Page 9 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

Case 20-03002-dwh    Doc 35    Filed 05/15/20

That's because case law doesn't specifically identify the fiduciary duties that a statutory scheme must impose to constitute a technical trust supporting a determination of nondischargeability under section 523(a)(4)—the "true fiduciary duties" that are "characteristic of a traditional trust relationship." I am left to infer the required duties from the case law by examining prodebtor decisions for characteristics found necessary but missing and procreditor decisions for characteristics found sufficient.

Where a statutory scheme characterizes a debtor as a fiduciary but does not impose obligations with respect property of the creditor held or controlled by the debtor, the scheme does not create a technical trust. The Ninth Circuit applied that principle in 2011 to rule in favor of a debtor-real-estate agent who had statutory fiduciary duties but did not possess the plaintiff's property.[38] In a similar 1993 Ninth Circuit BAP decision, the court quoted with approval the Restatement (Second) of Trusts, defining a trust as "a fiduciary relationship with respect to property, subjecting the person by whom the title to property is held to equitable duties to deal with the property for the benefit of another person."[39] Because the Restatement describes express trusts, and other case law recognizes that a relationship that is not an express trust, but is trust-like or trust-type, may constitute a technical trust, a technical trust need not satisfy all requirements of an express trust (such as that the trustee hold title to property), but instead must contain an express trust's other characteristics: the duty to deal with property equitably for the benefit of another person.

---

[38] Honkanen v. Hopper (*In re* Honkanen), 446 B.R. 373, 381 (9th Cir. 2011) (real-estate agent with statutory fiduciary duty but no possession of creditor's property). *See also* Windsor v. Librandi (In re Librandi), 183 B.R. 379 (M.D. Pa. 1995) (investment advisor with statutory fiduciary duties but not entrusted with customer's funds).

[39] Evans v. Pollard (*In re* Evans), 161 B.R. 474, 478 (9th Cir. B.A.P. 1993), quoting RESTATEMENT (SECOND) OF TRUSTS § 74 (AM. LAW INST. 1954).

Page 10 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

In a 1981 Ninth Circuit decision applying Bankruptcy Act § 17a(4), which is similar to section 523(a)(4), the court held that a technical trust was not created by a statute that prescribed disciplinary action for a construction contractor who diverted funds paid to the contractor for completion of the project and payment of subcontractors, because the statute operated only after wrongdoing and did not identify a *res* or spell out fiduciary duties.[40] But in two later Ninth Circuit BAP decisions, technical trusts were found to exist under statutes regulating funds paid to construction contractors. In 2006, the court addressed a Texas statute creating a trust for payments when received and prohibiting intentional use or retention of the funds before paying beneficiaries.[41] In 1990, the court addressed an Arizona statute creating a trust in favor of persons furnishing labor and materials for which payment to the contractor is made and expressly prohibiting the diversion or use of funds for any purpose other than to satisfy the claims of trust beneficiaries.[42]

In 1998, the Fifth Circuit the court held that a technical trust was not created by a statute requiring a lottery-ticket sales agent to account for and preserve lottery proceeds, denominated as trust funds, because the statute did not also require the agent to refrain from spending the proceeds for nontrust purposes or to segregate the proceeds from other funds.[43] The court commented that "without such a [prohibition on spending putative trust funds for nontrust purposes], the supposed trustee appears not so much to be responsible for managing a beneficiary's funds on the beneficiary's behalf as to be engaged in a typical agency relationship."

---

[40] Runnion v. Pedrazzini (*In re* Pedrazzini), 644 F.2d 756 (9th Cir. 1981).
[41] T & D Moravits & Co. v. Munton (*In re* Munton), 352 B.R. 707, 715 (9th Cir. B.A.P. 2006), citing Tex. Prop. Code Ann. § 162.001(a).
[42] Woodworking Enterprises, Inc. v. Baird (In re Baird), 114 B.R. 198, 203-04 (9th Cir. B.A.P. 1990), citing A.R.S. § 33-1005.
[43] Texas Lottery Comm'n v. Tran (*Matter of* Tran), 151 F.3d 339 (5th Cir. 1998).

Page 11 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

Case 20-03002-dwh    Doc 35    Filed 05/15/20

The court also characterized "the central focus on the inquiry under § 523(a)(4)" to be "whether the alleged fiduciary exercises actual control over the alleged beneficiary's money or property."[44]

In a 1999 Eleventh Circuit decision, the court held that a technical trust existed over insurance premiums received by a debtor-insurance agent for the benefit of insurers because a statute required the agent to account for premiums in the agent's fiduciary capacity, not commingle the funds, and promptly account for and pay the funds to the insurers.[45]

The converse of a statutory scheme that characterizes a debtor as a fiduciary but imposes no obligations with respect to property is one that imposes duties to deal with property equitably for the benefit of another person without characterizing the debtor as a fiduciary. I have found no case holding that the latter type of scheme fails to create a technical trust solely because it fails to label the debtor as a fiduciary or trustee.

I have found no case addressing whether a technical trust is created by a decedent's-estate-administration scheme such as Oregon's small-estate-affidavit scheme, i.e., one lacking an express determination that the administrator is a fiduciary. The most factually similar cases I have found are those addressing traditional statutory decedent's-estate-administration schemes. Several cases have held that the administrator of a decedent's estate is a section 523(a)(4) fiduciary and in so doing have not relied on any language in a state statute or case law and thus implicitly have taken that proposition as self-evident.[46] Other cases reaching the same holding

---

[44] *Tran*, 151 F.3d at 345.
[45] Quaif v. Johnson, 4 F.3d 950, 953 (11th Cir. 1993).
[46] Bennett v. Curboy (*In re* Bennett), No. 97-48642, 2002 WL 368521, at *1 n.1 (D. Mass. Feb. 25, 2002); Kress v. Kusmierek (*In re* Kusmierek), 224 B.R. 651, 656 (Bank. N.D. Ill. 1998); Hash v. Reed (*In re* Reed), 155 B.R. 169, 172 (Bankr. S.D. Ohio 1993).

Page 12 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

Case 20-03002-dwh    Doc 35    Filed 05/15/20

have based their decisions in part on state statutory language characterizing an administrator as a fiduciary or trustee.[47] In 2015, an Eastern District of New York bankruptcy judge considered in whether a debtor-voluntary administrator of a decedent's estate under New York law (with power only over personal property) is a fiduciary under section 523(a)(4). In support of its holding against the debtor, the court observed that an administrator is by statute a fiduciary,[48] but it didn't find that fact conclusive (or necessary). It also described the administrator's duties, all of which relate to estate property: to deposit money received, pay expenses and debts of the decedent from the decedent's assets in the administrator's possession,[49] distribute the balance according to law, and account for all personal property received and disbursed by the administrator.[50] I have found no case holding that the an estate administrator has a fiduciary duty under section 523(a)(4) only if a state statute or case law expressly imposes fiduciary or trustee duties.

From the case law described above, I infer the following principles for determining whether a statutory scheme imposes fiduciary duties that suffice to create a technical trust:

- The duties must relate to property that is actually held or controlled by the debtor.
- The duties must require the debtor to deal equitably with property for the benefit of another person.
- The duties must prohibit the debtor from using or retaining the property before satisfying the other person's claims.

---

[47] Chitester v. Watterson (*In re* Watterson), 524 B.R. 445, 451-52 (Bankr. E.D.N.Y. 2015); Estate of Nelson v. Nelson (*In re* Nelson), 255 B.R. 314, 319 (Bankr. D.N.D. 2000).
[48] Watterson v. Watterson (*In re* Watterson), 524 B.R. 445, 451 (Bankr. E.D.N.Y. 2015), citing N.Y.S.C.P. § 1306(3).
[49] *Watterson*, 524 B.R. at 451.
[50] *Watterson*, 524 B.R. at 451-52.

Page 13 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

- The duties must be imposed clearly and expressly.

- The duties must arise before and independent of any wrongdoing by the debtor.

- The scheme need not specifically characterize the duties as fiduciary or trust duties.

### (c) Duties of a small-estate affiant

Oregon's small-estate statutes[51] permit administration of a decedent's estate worth not more than $275,000, of which real property may be worth no more than $200,000.[52] The small-estate-administration process is begun by the filing of an affidavit.[53] Because the complaint alleges that Freddie died no later than 2018,[54] I refer to the versions of Oregon statutes in effect in 2018, rather than those in the 2019 version of Oregon Revised Statutes, which reflects changes enacted in 2019 and effective in 2020.

The affiant must make reasonable efforts to ascertain the identities[55] and amounts owed (both undisputed and disputed) to estate creditors. The affiant must include that information in the affidavit and mail the affidavit to each creditor.[56] A creditor is entitled to payment from estate property if its claim is listed as undisputed,[57] the creditor timely presents a claim that the affiant does not dispute,[58] or the probate court directs the affiant to pay a claim.[59]

---

[51] ORS 114-505-114.560 (2017).
[52] ORS 114.505(3), 114.515(2) (2017).
[53] ORS 114.515, 114.525 (2017).
[54] Complaint at 3 ¶ 7.
[55] ORS 114.525(9) (2017).
[56] ORS 114.525(10), (11) (2017).
[57] ORS 114.545(d)(B) (2017).
[58] ORS 114.545(d)(C) (2017).
[59] ORS 114.545(d)(D) (2017).

Page 14 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

Case 20-03002-dwh    Doc 35    Filed 05/15/20

Title to the decedent's property vests on death in the heirs or devisees—subject to the rights of creditors.[60] The probate court must direct payment of an allowed claim to the extent of estate property allocable to payment of the claim under the priority scheme or from and to the extent of property delivered or transferred to a claiming successor as a person entitled thereto as disclosed in the affidavit.[61] If there is insufficient estate property to pay all clams in full, the affiant must pay claims in a prescribed order of priority.[62] Among the priorities are a first priority for support of the decedent's spouse and children, a fifth priority for reasonable and necessary medical and hospital expenses of the decedent's last illness,[63] and a 14th priority for general claims.[64]

If no personal representative is appointed within four months after the filing of the affidavit, the decedent's interest in all property described in the affidavit is automatically transferred to the persons shown by the affidavit to be entitled thereto—but subject to creditor claims conceded by the affidavit or allowed by the affiant or court order and a surviving spouse's elective share.[65] Any claiming successor to whom estate property is delivered or transferred as a person entitled thereto as disclosed in the affidavit (an heir or devisee) is personally answerable and accountable to estate creditors to the extent of the value of the property received.[66]

The affiant may convey estate property before the end of the four-month period if each heir or devisee succeeding to the interest conveyed joins in the conveyance and any proceeds of

---

[60] ORS 114.215(1) (2017).
[61] ORS 114.545(3) (2017).
[62] ORS 114.545(1)(e) (2017).
[63] ORS 115.125(1)(a), (e) (2017).
[64] ORS 115.125(1)(n) (2017).
[65] ORS 114.555 (2017).
[66] ORS 114.545(4)(a) (2017).

Page 15 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

Case 20-03002-dwh    Doc 35    Filed 05/15/20

sale, net of sale expenses and secured debt, become estate property.[67] But, contrary to Blevins's lawyer's argument, that conveyance is free of unsecured creditor claims only if it is to a purchaser in good faith and for a valuable consideration.[68] By negative implication, a conveyance not in good faith or not for a valuable consideration—such as solely as an inheritance or devise—remains subject to the interest of creditors.

In view of the affiant's duty to use estate property to pay creditor claims, the affiant's inability to convey property free of creditor interests unless the conveyance is in good faith and for valuable consideration, and the liability of an heir or devisee receiving property from the affiant to estate creditors for the value of the property received, the affiant's duties include paying creditor claims in full before distributing any estate property to heirs or devisees. Accepting as true Credit Associates' allegation that Blevins, as affiant, transferred estate real property to herself without paying Credit Associates' claim, Blevins violated her affiant duty to Credit Associates.

### (d) Application of section 523(a)(4) to Blevins's duties as affiant

Comparing Blevins's small-estate affiant duties to the characteristics of fiduciary duties inferred from case law as sufficient to create a technical trust—

- Her duties relate to the real property, which she legally held or controlled.
- She was required to use the property to pay estate claims, including that of Credit Associates.
- Her duties arose before and independent of her wrongful conveyance of the property to herself.

---

[67] ORS 114.545(1)(g).
[68] ORS 114.545(1)(g), (3) (2017).

Page 16 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

- The duties prohibited her from using or retaining the property before satisfying . Credit Associates' claim.

- The duties are clearly and expressly imposed by statute.

Thus, under section 523(a)(4) and the facts alleged in the complaint, Blevins's affiant duties are sufficiently trust-like to constitute a technical trust, and a debt for defalcation while acting in that capacity is nondischargeable. That conclusion is consistent with the comment of an author of the Oregon State Bar's Administering Oregon Estates publication—before the 2019 amendment expressly making an affiant a fiduciary—that "[t]he affiant's duties and powers parallel, in abbreviated form, those of a personal representative" and that, if the affiant is not the sole heir or devisee, the affiant should deal with the decedent's property "in a fiduciary manner."[69]

One of the 2019 changes to Oregon's small-estate statutes was the amendment to ORS 114.545(1)(a) to declare that an affiant is "a fiduciary who is under a general duty to administer, preserve, settle and distribute the estate."[70] That amendment was made applicable to decedents who die on or after January 1, 2020.[71] Although there is no doubt that the amendment does not apply to Freddie, who died in or before 2018, it also does not foreclose a determination that the pre-amendment relationship of an affiant to creditors and other estate beneficiaries was—especially under section 523(a)(4)—a fiduciary capacity.

---

[69] Lisa N. Bertalan, *Initiating Probate and Small Estate Proceedings*, 1 ADMINISTERING OREGON ESTATES § 5.3-5 (OSB Legal Pubs. 2012 & Supp. 2018).
[70] 2019 Or. L. c. 165 § 13.
[71] 2019 Or. L. c. 165 § 33.

Page 17 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

I thus conclude that a claim under section 523(a)(4) for the debtor's maladministration of an estate does not fail legally just because debtor served as a small-estate affiant, rather than an appointed personal representative.

### 2. Other section 523(a)(4) issues

Blevins argues that even a personal representative is a fiduciary only to the estate's beneficiaries, not to its creditors.[72] But the statute that she cites, ORS 114.265, says no such thing. And case law at least as far back as the 1950s says the opposite: "[t]he personal representative, as a fiduciary, holds the assets of the estate in trust for the creditors and heirs."[73]

Because a small-estate affiant holds property subject to a duty to liquidate and distribute it first to creditors, the affiant's fiduciary duty is owed as much or more to creditors—who must be paid first—than to heirs or devises.

I also disagree with Blevins's argument that ORS 114.560, providing that the exclusive remedy for an affiant's violation of the small-estate statutes is a summary determination by the probate court, bars this action. State law governs whether a claim exists, but it cannot bar a creditor's prosecution of a nondischargeability action. Credit Associates has alleged that it has a claim under state law. Nothing in the text of the complaint—to which my present inquiry is limited—contradicts that allegation. Whether Credit Associates can prove that allegation and whether Blevins can disprove it or establish a defense to it are irrelevant to determination of the motion to dismiss.

---

[72] Motion to Dismiss at 6.
[73] *In re* Larabee's Estate, 193 Or. 543, 546 (1952).

Page 18 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

Case 20-03002-dwh    Doc 35    Filed 05/15/20

V. **Second claim: section 727**

The complaint cites "11 USC § 727(2)" and requests denial of Blevins's discharge.[74] I assume that Credit Associates meant to cite section 727(a)(2), which denies a debtor's discharge if the debtor disposed of assets in various specified ways "with the intent to hinder, delay, or defraud a creditor."

As Blevins rightly argues, section 727 only applies in a chapter 7 case. Hers is presently one under chapter 13 case, so the section 727 claim is not cognizable. Credit Associates argues that the facts that it has alleged in relation to its section 727 claim would support a claim under section 523(a)(2) and (4). The complaint doesn't allege any facts that are peculiar to a section 727 claim. So, although I agree in principle that a claim should not be dismissed just because Credit Associates has placed an unsuitable label on it, the section 727 claim adds nothing to the complaint that has not already been alleged for the section 523 claims.

At argument, Blevins's lawyer argued that the elements of a 727 claim don't overlap with those of one under section 523(a)(4), so those allegations shouldn't be considered even as additional support for the section 523(a)(4) claim.

I will dismiss the section 727 claim without leave to amend as long as the main case remains one under chapter 13, but also without prejudice to it being brought if Blevins becomes a chapter 7 debtor, either in this case or another.

VI. **Third claim: "to set aside trust deed"**

The final claim is a request that I set aside the trust deed that Blevins granted and allowed to be recorded against the property. She argues that Credit Associates has articulated no legal theory that would support this relief.

---

[74] Complaint at 4.

Page 19 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

Case 20-03002-dwh    Doc 35    Filed 05/15/20

I agree and will dismiss this claim, but Credit Associates may replead if it is prepared to allege that a legal basis to set aside the trust deed. At the same time, it may also amend to correct or add any other defendant with respect to this claim.

## VII. Conclusions

I will not dismiss the first claim under section 523(a)(2) and (4). I will dismiss the second under section 727 claim and the third claim to set aside the trust deed. I will grant Credit Associates leave to amend its complaint but require that any amended complaint be filed within 14 days after entry of the order on this decision.

I will prepare an order.

# # #

Page 20 – MEMORANDUM DECISION ON BONNI LYN BLEVINS'S MOTION TO etc.

Case 20-03002-dwh    Doc 35    Filed 05/15/20